**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BIBI KHAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALCON LABORATORIES, INC. and ALCON RESEARCH LLC,<br><br>Defendants. | Case No. 2:26-cv-2900<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BIBI KHAN ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant ALCON LABORATORIES, INC. and ALCON RESEARCH LLC (hereinafter "Alcon" or "Defendants").

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Alcon with respect to the manufacturing, marketing, and sale of Defendants' over-the-counter ophthalmic products, specifically "Systane Night Gel Comforting Dry Eye Relief" and "GenTeal Tears Lubricant Eye Gel" (hereinafter collectively referred to as the "Products"), throughout the United States which lacked an assurance of sterility.

2.      Defendants have improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by explicitly labeling the Products as "STERILE" while omitting and not disclosing to consumers on its packaging that the Products lack an assurance of sterility. Using non-sterile eye products carries a severe risk of introducing bacteria or fungi directly into the eye, which can cause serious, vision-threatening infections.

1

3.      In April 2026, the FDA published a Class II recall initiated by Alcon for the Products (Recall Number D-0491-2026, Event ID 98815) due to a "Lack of Assurance of Sterility" stemming from FDA inspection observations at the manufacturing facility (the "Recall").

4.      According to the FDA posting and retail distribution notices, the Products were distributed nationwide through retail stores and pharmacies, including CVS Pharmacy.

5.      Consumers who purchased Defendants' Products, such as Plaintiff, reasonably expected that the Products they purchased would be safe for their intended ophthalmic use, were in fact sterile as labeled, and would not carry a risk of introducing harmful pathogens into the eye.

6.      Defendants are using a marketing and advertising campaign that omits from the packaging that the Products lack an assurance of sterility.

7.      Knowing whether an eye gel is sterile is material to reasonable consumers.

8.      The lack of sterility assurance was solely within the possession or knowledge of Defendants, and consumers could only obtain such information by sending the products off to a laboratory for extensive testing.

9.      This omission leads a reasonable consumer to believe they are purchasing a safely manufactured, sterile ophthalmic product when in fact they are purchasing an adulterated product that poses a significant risk to ocular health.

10.     Consumers, such as Plaintiff, trust manufacturers like Defendants to sell products that are safe to use in the eyes and are free from fundamental manufacturing defects.

11.     Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product–the packaging and labels themselves, which prominently state "STERILE":

2




12.    As such, a reasonable consumer reviewing Defendants' labels and packaging reasonably believes that they are purchasing a product that is safe for ocular use and does not lack an assurance of sterility.

13.    Thus, reasonable consumers would not think that Defendants are omitting that the Products lack an assurance of sterility.

14.    Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products lack sterility assurance, which is dangerous to one's health and well-being.

15.    Plaintiff and Class Members paid a price premium for the Products based upon Defendants' marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.

16.    Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

3

17. Accordingly, Defendants' conduct violated and continues to violate, inter alia, New York General Business Law §§ 349 and 350. Defendants also breached and continue to breach their warranties regarding the Products.

18. Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendants are citizens of Texas and Delaware; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

20. This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

21. Venue is proper because Plaintiff is a citizen of this District, and a substantial part of the events or omissions giving rise to the Class's claims occurred in this district.

## PARTIES

**Plaintiff**

22. Plaintiff Bibi Khan is a citizen and resident of Nassau County, New York.

23. During the relevant period, Plaintiff Khan purchased Defendants' Products that lacked an assurance of sterility.

24. Plaintiff Khan purchased one unit of the Products at a CVS Pharmacy in New York.

25.     The unit purchased included a lot code of 1U63 and an expiration date of 2026-05, indicating Plaintiff's unit was subject to the Recall.

26.     Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the sterility and safety of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products.

27.     Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.

28.     The Products Plaintiff received were worthless because they lacked an assurance of sterility.

29.     Alternatively, Plaintiff paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions.

30.     Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

31.     Defendant Alcon Laboratories, Inc. is a corporation with its principal place of business located at 6201 South Fwy, Fort Worth, Texas 76134.

32.     Defendant Alcon Research LLC is a limited liability company with its principal place of business located at 6201 South Fwy, Fort Worth, Texas 76134.

33.     Defendants manufacture, market, advertise, and distribute the Products throughout the United States.

34.     Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of their Products.

5

## FACTUAL BACKGROUND

35.    Defendants manufacture, market, advertise, and sell over-the-counter ophthalmic products, including the Systane Night Gel and GenTeal Tears Lubricant Eye Gel.

36.    The Products were manufactured at the same Excelvision facility, bear the same 'STERILE' representation, and were subject to the same FDA Class II recall for a lack of sterility assurance (Recall Number D-0492-2026).

37.    Consumers, such as Plaintiff, rely entirely on the representations made by manufacturers regarding the sterility of products intended to be placed directly into the eye.

38.    Consumers lack the meaningful ability to test or independently ascertain or verify whether an eye gel is actually sterile, especially at the point of sale, and therefore must and do rely on Defendants to truthfully and honestly report the condition of the Products.

39.    The Products' packaging affirmatively states the product is "STERILE."

40.    This leads reasonable consumers to believe the Products were manufactured under appropriate conditions to guarantee sterility.

41.    However, the Products lack an assurance of sterility due to manufacturing deficiencies observed by the FDA.

42.    The Products lack an assurance of sterility due to severe, systemic manufacturing deficiencies observed by the FDA at Defendants' contract manufacturing facility in France, Excelvision Fareva ("Excelvision").

43.    In a Warning Letter issued to Excelvision following an inspection from November 12 to 19, 2024, the FDA documented egregious violations of Current Good Manufacturing Practice (CGMP) regulations that directly compromised the sterility of Defendants' Products.

6

44.    The FDA found that Excelvision failed to adequately investigate the presence of dangerous mold species, including Penicillium citrinum, Fusarium oxysporum, and Aspergillus, within the critical ISO 5 (Grade A) aseptic filling areas where the Products are exposed to the environment.

45.    These contamination hazards were not isolated incidents. The FDA documented a history of mold recovery in the aseptic filling lines dating back to 2022, yet Excelvision failed to implement effective corrective actions.

46.    Furthermore, the FDA observed shocking failures in basic aseptic techniques by operators handling the filling lines, including extending non-sanitized forearms near open product bottles and blocking clean air flow.

47.    The facility also suffered from fundamental equipment failures, such as documented scratches and cracks on the aseptic filling line that were left uncorrected for over a year.

48.    Because Defendants rely on this facility to produce the Products, Defendants are in the unique and superior position of knowing—or having the responsibility to know—the manufacturing conditions where the Products are processed.

49.    Accordingly, Defendants possess superior knowledge regarding the risks involved in the production and manufacturing of their Products.

50.    Such knowledge is not readily available to consumers like Plaintiff and Class Members.

51.    Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the safety and sterility of the Products.

7

52.    Therefore, Defendants' false, misleading, and deceptive omissions regarding the Products' lack of sterility assurance are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiff and Class Members.

53.    Defendants' misrepresentations and omissions were material and intentional because consumers are fundamentally concerned with the safety of products they apply to their eyes.

54.    Consumers such as Plaintiff and Class Members are influenced by Defendants' marketing and advertising campaign, and the Products' labels.

55.    Defendants know that if they had not omitted that the Products lacked sterility assurance, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

56.    Consumers rely on marketing and information in making purchasing decisions.

57.    By explicitly stating the product is "STERILE" while omitting the lack of sterility assurance on the labels of the Products throughout the Class Period, Defendants know that those misrepresentations and omissions are material to consumers since they would not purchase an unsterile eye product.

58.    Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

59.    Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and Class Members.

8

60.    In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a product marketed as sterile over comparable products not so marketed.

61.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiff and Class Members in that they: Paid a sum of money for Products that were not as Defendants represented; Paid a premium price for Products based on Defendants' false and misleading misrepresentations; Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted; Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented; and Were denied the benefit of the properties of the Products Defendants promised.

62.    Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and Class Members would not have been willing to purchase the Products.

63.    Plaintiff and Class Members paid for Products that are sterile and safe for ocular use.

64.    Since the Products lack an assurance of sterility, the Products Plaintiff and Class Members received were worth less than the Products for which they paid.

65.    Plaintiff and Class Members all paid money for the Products; however, Plaintiff and Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions.

9

66.     Plaintiff and Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.

67.     Consequently, Plaintiff and Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

68.     Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products.

69.     Had Plaintiff and Class Members known the truth about the Products, i.e., that they lack an assurance of sterility, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

### CLASS ALLEGATIONS

70.     Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

71.     The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased Defendants' affected Products.

**New York subclass:** All persons within the state of New York, who purchased Defendants' affected Products.

72.     Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

73.     Plaintiff Khan has standing to assert claims on behalf of Class Members who purchased GenTeal Tears Lubricant Eye Gel because it is substantially similar to the Systane Night Gel she purchased. Both products are over-the-counter ophthalmic gels sold by Defendants, manufactured at the same Excelvision facility, labeled as 'STERILE', and suffer from the exact same manufacturing defect rendering them unsterile

74.    *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

75.    *Commonality:* Questions of law or fact common to the Class include, without limitation:

    a.  Whether the Products in question were unsafe and lacked sterility assurance;

    b.  Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    c.  Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

    d.  Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the sterility of their Products;

    e.  Whether Defendants had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

    f.  Whether Defendants' false and misleading statements and omissions concerning their Products were likely to deceive the public;

    g.  Whether Defendants' conduct constitutes an unlawful breach of the implied warranty of merchantability;

    h.  Whether Defendants' conduct constitutes an unlawful breach of express warranties;

    i.  Whether Defendants fraudulently omitted material information in their interactions with consumers;

    j.  Whether Defendants were unjustly enriched; and

    k.  Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

76.    *Typicality:* The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner

as Plaintiff, Class Members have the same claims against Defendants relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

77.     *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

78.     *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendants owed a duty to Plaintiff and the Class and whether Defendants breached their duties predominate over individual questions such as measurement of economic damages.

79.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

80.     *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

81.     The Class may be certified pursuant to Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

82.     The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

83.     Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of New York GBL § 349
### (On behalf of Plaintiff and the New York subclass)

84.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

85.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

86.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendants.

87.     Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

88.     Defendants' improper consumer-oriented conduct—including explicitly labeling the product "STERILE" while failing to disclose that their Products lacked an assurance of sterility—is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have.

89.     Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

90.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled.

91.     Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

92.     Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

93.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

94.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of New York GBL § 350**
**(On behalf of Plaintiff and the New York subclass)**

95.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

97.    N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows:

> The term 'false advertising', including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

98.    Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning their Products inasmuch they misrepresent that the Products are strictly "STERILE" and safe for consumption and do not list that the Products lack an assurance of sterility.

99.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, dangerous, and entirely worthless.

100.    Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

101.    Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

102.    Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

103.    Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

104.    Defendants made the material omissions described in this Complaint in their advertising and on the Products' packaging and labeling.

105.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.

106.    Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

107.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

108.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

109.    The conduct of Defendants in manufacturing, distributing, and selling the Products lacking an assurance of sterility constituted negligence in failing to reasonably act in accordance with all applicable standards of care.

110.    Defendants owed Plaintiff and Class Members a duty not to disseminate a materially adulterated product.

111. Defendants breached said duty of care when they nevertheless manufactured, distributed, and sold the Products lacking an assurance of sterility to consumers, including Plaintiff.

112. Defendants also breached their duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the lack of sterility assurance, even after Defendants were, or should have been, fully aware that the Products were adulterated.

113. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

114. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

115. Defendants represented to Plaintiff and Class members that their Products were reliable, merchantable, and safe to use.

116. The Products fail to conform to the performance, safety, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

117. Defendants knew or should have known that their Products could not conform to their representations because of the lack of sterility assurance.

118. Defendants mispresented, concealed, and omitted material information concerning the manufacturing defects affecting their Products.

119. The lack of sterility assurance and the facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

120. Defendants mispresented, concealed, and omitted material information concerning the lack of sterility assurance in order to induce Plaintiff and Class Members to purchase their Products at a substantially higher price than what they would otherwise have paid.

121. Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the Products.

122. Plaintiff and Class Members would not have purchased the Products if they knew that they were not assured to be sterile, or they would have only paid substantially less.

123. Plaintiff and Class Members conferred substantial benefits on Defendants by purchasing adulterated Products at a premium without receiving a product that conformed to Defendants' representations.

124. Defendants knowingly and willingly accepted and enjoyed these benefits.

125. Defendants' retention of these benefits would be inequitable because Defendants obtained benefits to the detriment of Plaintiff and Class Members when Plaintiff and Class Members did not obtain their promised benefits.

126. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members are entitled to restitution

**FIFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(on behalf of Plaintiff and all Class Members)**

127. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

128. The sale of Defendants' Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[1]

129. Defendants, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as safe and sterile.

130. Plaintiff and Class Members purchased the Products relying on Defendants' skill and judgment in properly manufacturing, packaging and labeling the Products.

131. Defendants breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any."

132. See U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable.

133. Defendants knowingly breached the implied warranties by selling Products lacking sterility assurance to Plaintiff and the Class without properly notifying them of the defect.

---

[1] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

134.    Within a reasonable time after they knew or should have known, Defendants did not change the Products' labels to warn of the manufacturing defect.

135.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

136.    Defendants have actual notice of the warranty claims alleged herein due to their recall of the Products.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

   a.    An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

   b.    An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

   c.    An order enjoining Defendants' unlawful conduct.

   d.    An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

   e.    An award of interest as provided by law, including pre-judgment and post-judgment interest.

   f.    Such other and further relief as this Court may deem just, equitable, or proper.

Dated: May 14, 2026                    Respectfully submitted,

                         _/s/ Brett R. Cohen_____
                         Brett R. Cohen
                         **LEEDS BROWN LAW, P.C.**
                         One Old Country Road, Suite 347
                         Carle Place, New York 11514
                         Tel: (516) 873-9550
                         bcohen@leedsbrownlaw.com

                         Daniella Levi

20

**DANIELLA LEVI & ASSOCIATES, P.C.**
159-16 Union Turnpike, Suite 200
Fresh Meadows, New York 11366
Tel: (718) 380-1010
daniellalevi@levilawny.com

*Counsel for Plaintiff and Proposed Class*